# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| AMERICAN SECURITY & AUDIO VIDEO SYSTEMS, INC., ET AL.,<br><br>Plaintiff,<br><br>vs.<br><br>PREP TMT, LLC, ET AL.,<br><br>Defendants. | CASE NOS.  5:22-CV-00558-AMK<br>5:22-CV-01399-AMK<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**MEMORANDUM OPINION AND ORDER**<u></u> |

Case Nos. 5:22-CV-558 and 5:22-CV-1399 (collectively the "Ohio Actions") have been consolidated pursuant to Federal Rule of Civil Procedure 42.  Before the Court are parallel Motions to Dismiss, Stay, or Transfer Venue (the "Motions") filed by defendants Prep TMT, LLC ("Prep"), Thomas Reed ("Mr. Reed"), and Matthew Prost ("Mr. Prost") (collectively "Defendants") in the Ohio Actions.  (22-CV-558, ECF Doc. 8; 22-CV-1339, ECF Doc. 4.)  The Motions seek dismissal of the Ohio Actions for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), dismissal or stay under *Colorado River* abstention, or transfer of venue to the Eastern District of Missouri.  (*Id.*)  The parties have consented to the jurisdiction of the undersigned Magistrate Judge.  (22-CV-558, ECF Doc. 11; 22-CV-1399, ECF Doc. 15.)

Having considered the briefs of the parties and applicable law, the Court finds the application of *Colorado River* abstention to be warranted in this case, and accordingly STAYS the Ohio Actions pending resolution of the Missouri state court action filed by Defendants in the Circuit Court of the County of St. Charles, Missouri, *Prep TMT, LLC v. American Security & Audio Video Systems, Inc., et al.*, Cause No. 2211-AC01260 (the "Missouri Action").

1

# I.    Background

## A.    Procedural History

Defendant Prep filed the Missouri Action against plaintiff American Security & Audio Video Systems, Inc. ("ASAV") on March 16, 2022, asserting claims for breach of contract, quantum meruit, and unjust enrichment in connection two subcontractor agreements.  (22-CV-558, ECF Doc. 8-3, pp. 6-11.)

Three weeks later, on April 7, 2022, ASAV filed the first action before this Court, a single claim for misappropriation of trade secrets in violation of 18 U.S.C. § 1831 *et seq.* against all Defendants (the "Federal Question Action").  (22-CV-558, ECF Doc. 1.)  ASAV also filed a Motion for Preliminary Injunction.  (22-CV-558, ECF Doc. 3.)  Defendants filed their Motion to Dismiss, Stay, or Transfer Venue on June 30, 2022.  (22-CV-558, ECF Doc. 8.)  In a telephone conference on July 20, 2022, the parties agreed that Defendants' motion must be decided before any briefing on the Motion for Preliminary Injunction.  (*See* 22-CV-558, ECF Doc. 12.)  The Motion to Dismiss, Stay, or Transfer Venue is fully briefed.  (22-CV-558, ECF Docs. 14, 15.)

On July 1, 2022, ASAV and its president Frank Baxter ("Mr. Baxter") (collectively "Plaintiffs") filed a separate suit in Summit County Court of Common Pleas, alleging breach of contract, tortious interference with contract, tortious interference with business relationships, and civil conspiracy to commit tortious interference, all in connection with the same subcontractor agreements at issue in the Missouri Action.  (22-CV-1399, ECF Doc. 1-2, pp. 3-27.)  The case was removed to this Court on August 8, 2022 (the "Removal Action").  (22-CV-1399, ECF Doc. 1.)  Defendants filed another Motion to Dismiss, Stay, or Transfer Venue on August 15, 2022, which is now fully briefed.  (22-CV-1399, ECF Docs. 4, 13, 17.)  In a telephone conference on October 17, 2022, the parties agreed that the Motions to Dismiss, Stay, or Transfer Venue in the

Ohio Actions must be resolved before further action in either case.  (22-CV-1399, ECF Doc. 18.)

No further action has been taken in the Ohio Actions.

A review of the docket of the Missouri Action reveals that ASAV filed a motion to

dismiss on April 7, 2022, and Prep filed a Response on May 6, 2022.  (*See Missouri Case.net*,

Case No. 2211-AC01260, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last

visited April 13, 2023.)  On May 16, 2022, the Missouri state court denied ASAV's motion to

dismiss, and permitted Prep to file an Amended Petition attaching the subcontractor agreements.

(*Id.*)  Prep filed its Amended Petition on June 1, 2022, and ASAV filed its Answer on June 24,

2022.  (*Id.*)  Prep filed Interrogatories on August 8, 2022.  (*Id.*)  The parties filed a joint motion

for a stipulated protective order on September 27, 2022, which was granted on October 3, 2022.

(*Id.*)  ASAV filed its certificate of service of production of documents on October 31, 2022.  (*Id.*)

All further hearings have been continued until April 24, 2023.  (*Id.*)

## B.     Factual Allegations and Averments

Plaintiffs allege similar facts in the Verified Complaint for the Federal Question Action,

the Complaint for the Removal Action, and the Answer in the Missouri Action.  Where the facts

alleged in the Ohio Actions are substantially similar, the undersigned references only the

Verified Complaint in the Federal Question Action (*compare* 22-CV-558, ECF Doc. 1, *with* 22-

CV-1399, ECF Doc. 1-2.).  Where the facts presented in the two cases differ, the undersigned

references the separate filings.

ASAV is an Ohio corporation and transacts business in multiple states, including Ohio

and Missouri.  (22-CV-558, ECF Doc. 1, ¶ 10.)  Mr. Baxter is a citizen of Ohio and is domiciled

there.  (22-CV-1399, ECF Doc. 1-2, ¶ 9.)  Prep is a Missouri limited liability company which

primarily transacts business in Missouri, but has also performed installations in Ohio.  (22-CV-

558, ECF Doc. 1 ¶ 11.)  Mr. Reed is Prep's owner, and Mr. Prost is its general manager.  (*Id.* at ¶¶ 12-13.)

In the Federal Question Action, ASAV asserts federal question jurisdiction pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* ("DTSA").  (*Id.* at ¶ 14.)  In support of personal jurisdiction, ASAV asserts "Defendants caused tortious injury to ASAV by acts outside of Ohio committed with the purpose of injuring ASAV in Ohio, when Defendants might reasonably have expected that ASAV would be injured in Ohio."[1]  (*Id.* at ¶¶ 15, 16.)  ASAV states venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to its claims occurred here in the Northern District of Ohio.  (*Id.* at ¶ 17.)

In the Removal Action, Plaintiffs assert that the Summit County Court of Common Pleas has personal jurisdiction under Ohio's long-arm statute, and that personal jurisdiction comports with due process.  (22-CV-1399, ECF Doc. 1-2, ¶¶ 14-15.)  Plaintiffs also state that venue is proper because they suffered harm in Summit County, and because they reside in and regularly conduct business in Ohio.  (*Id.* at ¶ 16.)

ASAV hired Prep in July 2021 to perform work on its behalf for client Bloom Medicinals ("Bloom") at three locations, including O'Fallon and Cape Girardeau, Missouri.  (22-CV-558, ECF Doc. 1, ¶ 3.)  ASAV provides integrated electronic security systems for its clients, and has spent years developing and refining its installation techniques and the requirements for successful installation of its security systems.  (*Id.* at ¶¶ 19-20.)  These methods include proprietary information about its systems, including how its engineer designed the systems, the

---

[1] In the Complaint, ASAV asserts personal jurisdiction pursuant to R.C. 2307.382(A)(4).  (22-CV-558, ECF Doc. 1, ¶ 15.)  However, the language used parallels that found in R.C. 2307.382(A)(6). (*Compare id.* at ¶ 15 *with* R.C. §§ 2307.382(A)(4) *and* 2307.382(A)(6).)  Plaintiffs' brief in opposition argues only under R.C. 2307.382(A)(6), (22-CV-558, ECF Doc. 14, pp. 10-13), and the Court therefore only considers the arguments made pursuant to R.C. 2307.382(A)(6).

hardware used in the systems, and other special notes about ASAV system requirements.  (*Id.* at ¶ 20.)  Successful installation of these systems require two key categories of proprietary information: the job ticket and programming information with related training.  (*Id.* at ¶¶ 21-23.) Without this proprietary information, the installer is unable to properly install ASAV's systems. (*Id.* at ¶ 24.) For this reason, ASAV requires all of its subcontractors to protect ASAV's proprietary materials and intellectual property.  (*Id.* at ¶ 25.)

Bloom is one of ASAV's established clients, a company with locations in Missouri, Ohio, and other states; four locations are in Missouri, including Cape Girardeau, O'Fallon, Springfield, and Cameron.  (*Id.* at ¶¶ 26-27.)  Bloom hired ASAV to perform work at Cape Girardeau and O'Fallon, and planned to use ASAV at Cameron and Springfield.  (*Id.* at ¶ 31.)  In June and July 2021, ASAV interviewed several subcontractors for the Cape Girardeau and O'Fallon projects, and selected Prep to perform the installation work.  (*Id.* at ¶¶ 32-33.)

The O'Fallon subcontractor agreement was signed by Mr. Prost on July 1, 2021, and the Cape Girardeau subcontractor agreement was signed on July 16, 2021 by Mr. Reed.  (*Id.* at ¶¶ 37-38.)  In those agreements, Prep agreed "'not to divulge any information about [ASAV], its operations, customers, marketing policies, installation policies, monitoring, or servicing policies.'"  (*Id.* at ¶ 39 (quoting ECF Doc. 1-2, pp. 12, 15).)  Prep additionally agreed it would not "contact, solicit, or attempt to sell similar products of [ASAV] to any of [ASAV]'s customers," regardless of the customer's geographical location, for a period of 36 months after the termination of the agreements.  (*Id.* at ¶ 42 (quoting ECF Doc. 1-2, pp. 12, 15).)  Prep also agreed that it would return all equipment, supplies, paperwork, work orders, and all of ASAV's other property or documents upon termination of the agreement. (*Id.* at ¶ 43 (citing ECF Doc. 1-

2, pp. 12, 15).) Upon receiving those assurances, ASAV provided access to its confidential information. (*Id.* at ¶¶ 44-47.)

On July 7, 2021, ASAV emailed Mr. Prost for a status update on the O'Fallon project, and they exchanged emails. (*Id.* at ¶¶ 49-52.) On July 9, 2021, Mr. Reed called ASAV with questions about the Cameron projects. (*Id.* at ¶ 53.) ASAV sent an email to Mr. Prost regarding the projects on August 17, 2021, but Prep did not respond despite several phone calls and emails. (*Id.* at ¶¶ 54-58.) ASAV provided Prep with additional proprietary information for use in connection with the projects on September 21 and October 6, 2021. (*Id.* at ¶ 60.) ASAV then determined that additional on-site training was necessary for Prep to complete the projects and travelled to Missouri in September and October 2021. (*Id.* at ¶¶ 61-64.) The training provided proprietary information, including in-depth discussion of ASAV's systems, step-by-step guidance in their building and assembly, and the steps necessary for their proper function. (*Id.* at ¶¶ 65-66.) ASAV reported continued issues despite the additional training. (*Id.* at ¶¶ 67-71.)

In March 2022, ASAV "bec[a]me aware that Prep was performing covert work, outside of the Subcontractor Agreements, for Bloom regarding the O'Fallon and Cape Girardeau Projects and potentially other Bloom projects." (*Id.* at ¶ 72.) It scheduled a conference call with Mr. Reed and Mr. Prost for March 4, 2022. (*Id.* at ¶¶ 73-74.) During that conference call, Mr. Baxter confronted Mr. Reed and Mr. Prost about Prep "abusing its access to ASAV's confidential and trade-secret information to steal Bloom out from under ASAV." (*Id.* at ¶ 75.) Neither Mr. Reed nor Mr. Prost denied speaking to Bloom about Prep performing work for Bloom that ASAV had previously agreed to perform. (*Id.* at ¶ 76.) Similarly, neither denied that Prep had used ASAV's confidential and trade-secret information. (*Id.* at ¶ 77.)

ASAV informed Prep that it would be terminating its Agreements, and provided written notice of that termination on March 7, 2022, citing defective and unsatisfactory performance under Sections 10 and 12 of the Agreements due to Prep's attempts to steal Bloom as a client. (*Id.* at ¶¶ 79-85.)  In the termination notice, Mr. Baxter requested a list of work that Prep had failed to complete on the O'Fallon and Cape Girardeau projects.  (*Id.* at ¶ 86.)  As of the date of the filing of the two Complaints, Prep had failed to return ASAV's confidential and proprietary information and property, including unused job materials, programming information, job tickets, blueprints, and other sensitive documents.  (*Id.* at ¶ 87; 22-CV-1399, ECF Doc. 1-2, ¶ 86.)   As a result of Defendants' conduct, ASAV's relationship with Bloom was irreparably damaged.  (22-CV-558, ECF Doc. 1, ¶ 89.)

ASAV asserts in the Federal Question Action that Prep abused its access to ASAV's trade secrets, and that Defendants are liable for misappropriating ASAV's trade secrets in violation of the DTSA.  (*Id.* at ¶¶ 97-107.)  In the Removal Action, Plaintiffs allege that their relationship with Bloom was irreparably damaged, and that they suffered a loss of customers and revenue because of Defendants' actions.  (22-CV-1399, ECF Doc. 1-2, ¶¶ 88.)  Plaintiffs assert Defendants have converted ASAV's established goodwill to their own business interests, have excluded ASAV from its own established contractual relationships, and have diverted ASAV's customers to themselves.  (*Id.* at ¶¶ 89-90.)  Plaintiffs' claims in the Removal Action include breach of contract, tortious interference with contracts and business relationships, and civil conspiracy to commit tortious interference.  (*Id.* at ¶¶ 95-123.)

## II.      Law and Analysis

Defendants seek dismissal of the Ohio Actions for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), dismissal or stay under *Colorado River* abstention, or

transfer of venue to the Eastern District of Missouri.  (22-CV-558, ECF Doc. 8; 22-CV-1339, ECF Doc. 4.)  The Court will address each argument in turn.

## A.      Motions to Dismiss for Lack of Personal Jurisdiction

Before considering the other motions, this Court must first determine as a threshold matter whether it has personal jurisdiction over Defendants.  *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93-95 (1998).  "The plaintiff bears the burden of establishing that jurisdiction exists" and must "set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court may decide a 12(b)(2) motion to dismiss on the pleadings and affidavits alone.  *Id*.  Here, neither party has requested discovery or an evidentiary hearing, and the Court finds determination on the record to be appropriate.

"Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that jurisdiction exists," *Theunissen,* 935 F.2d at 1458, and "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff," *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  Thus, courts do not give weight to defendants' controverting assertions.  *See CompuServe, Inc.*, 89 F.3d at 1262.

When determining whether personal jurisdiction exists, the court must apply the law of the forum state, subject to the limits of the Due Process Clauses of the Fifth and Fourteenth Amendments.  *See CompuServe, Inc.*, 89 F.3d at 1262; *see also Handley v. Ind. & Mich. Elec. Co.*, 732 F.2d 1265 (6th Cir. 1984).  That means "[t]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Id.* (internal quotations and marks omitted).

Defendants assert that this Court lacks personal jurisdiction over them because Plaintiffs cannot satisfy Ohio's long arm statute, and because the exercise of personal jurisdiction does not comport with due process.  (22-CV-558, ECF Doc. 8, pp. 5-13.)  Plaintiffs disagree.

### 1.      Ohio Long-Arm Statute

Plaintiffs argue that they have alleged sufficient facts to support personal jurisdiction over Defendants under the Ohio long-arm statute, which provides in pertinent part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code Ann. § 2307.382(A)(6).  Defendants argue the requirements of this statute were not met because Plaintiffs have not alleged sufficient facts to establish that they lost business or sustained harm in Ohio.  (22-CV-558, ECF Doc. 8, p. 13; 22-CV-1399, ECF Doc. 4, pp. 11-13.)

Federal courts in Ohio have generally "taken a broad approach" in applying Section 2307.382(A)(6).  *See Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012).  Most pertinent here, courts have found allegations of tortious misappropriation and/or misuse of proprietary or customer information of a company located in Ohio sufficient to meet the *prima facie* standard to show a tortious injury in Ohio.  *See, e.g., Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 480 (6th Cir. 2015) (finding alleged misappropriation of technical and customer information from Ohio company meets *prima facie* long-arm standard); *Just Funky, LLC v. Boom Trendz, LLC*, No. 5:21-CV-1127, 2021 WL 5494814, at *6 (N.D. Ohio Nov. 23, 2021) (finding allegations that defendant misappropriated trade secrets of Ohio company to benefit himself at the expense of that company met *prima facie* standard); *CrossCountry Mortg., Inc. v. Messina*, No. 1:19CV1021, 2019 WL 5653288, at *8 (N.D. Ohio Oct. 31, 2019) (finding parties could "reasonably expect[] that injury would occur in Ohio by taking the confidential

information of their Ohio-based employer"); *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 167 (S.D. Ohio 2012) (finding alleged disclosure of trade secrets outside of Ohio "harms [the plaintiff] who is located in Ohio"); *Safety Today, Inc. v. Roy*, No. 2:12-CV-510, 2012 WL 2374984, at *2 (S.D. Ohio June 22, 2012) (finding alleged misuse of trade secrets "cause[s] loss in Ohio when the company is based here"); *Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*, No. 2:10-CV-734, 2012 WL 169963, at *3 (S.D. Ohio Jan. 19, 2012) (finding alleged misuse of client lists to compete and solicit those clients sufficiently alleges tortious acts causing injury within Ohio).

In this case, ASAV – an Ohio company – alleges an ongoing business relationship with Bloom that involved work on projects for Bloom in Ohio and Missouri and discussions about future projects.  (22-CV-558, ECF Doc. 1, ¶¶ 10, 26-31.)  ASAV hired Prep to assist with two Bloom projects in Missouri, subject to signed subcontractor agreements.  (*Id.*, ¶¶ 33, 37-38.) Pursuant to those agreements, ASAV provided proprietary information to Prep so that it could install ASAV's systems, but required Prep to safeguard that information.  (*Id.,* ¶¶ 20-25, 36-38.) Prep also agreed not to divulge information about ASAV's operations, customers, or policies, and not to solicit ASAV's customers or subscribers for thirty-six months from the termination of the agreements.  (*Id.*, ¶¶ 39-40, 42.)

Following execution of the subcontractor agreements, ASAV gave Prep access to its confidential trade secret information and its customer contacts at Bloom.  (*Id.*, ¶¶ 44, 47, 60.) However, ASAV later became aware that Prep was performing covert work for Bloom outside of the subcontractor agreements, which Defendants did not deny.  (*Id.*, ¶¶ 72-79.)  As a result of those actions, ASAV's business relationship with Bloom was irreparably damaged.  (*Id.*, ¶ 89.)

ASAV terminated the agreements and demanded the return of its proprietary information and property under the agreements, but Defendants did not return the materials.  (*Id.*, ¶¶ 43, 79, 87.)

In the Federal Question Action, ASAV alleges that Defendants used ASAV's proprietary information to solicit customer accounts and divert the business of its customers, including Bloom.  (*Id.*, ¶ 93.)  In the Removal Action, Plaintiffs allege that Prep breached the subcontractor agreements by misusing ASAV's proprietary information, failing to return its property, soliciting its customers, and providing similar services to its customers.  (22-CV-1399, Doc. 1-2, ¶ 98.) Plaintiffs also allege tortious interference claims based on Defendants' interference with ASAV's contract and business relationship with Bloom.  (*Id.*, ¶¶ 100-123.)

In short, Defendants allegedly obtained ASAV's proprietary and customer information subject to an agreement to safeguard the information and not solicit the customers, but instead misused the proprietary information to steal an existing customer.  ASAV had previously worked for that customer in numerous states, including Ohio, and Plaintiffs' relationship with that customer was irreparably damaged.  Considering the factual allegations in the light most favorable to Plaintiffs, the Court finds Defendants would have had a "reasonable expectation of enhancing [their] own business at the expense of [ASAV's] business in Ohio." *Stolle Mach. Co., LLC*, 605 F. App'x at 480.  Plaintiffs have therefore made a *prima facie* showing under the Ohio long-arm statute to support the exercise of personal jurisdiction over Defendants.

### 2.    Fiduciary-Shield Doctrine as to Defendants Reed and Prost

Defendants also argue that the fiduciary-shield doctrine precludes the Court from exercising personal jurisdiction over Mr. Reed and Mr. Prost, who are corporate employees.  (22-CV-558, ECF Doc. 8, pp. 14-15.)  The fiduciary-shield doctrine establishes that an individual may be shielded from an exercise of personal jurisdiction if he "'has contact with a particular state only by virtue of his acts as a fiduciary of [a] corporation.'" *Balance Dynamics Corp. v.*

11

*Schmitt Indus., Inc.*, 204 F.3d 683, 697 (6th Cir. 2000) (citation omitted).  In other words, "jurisdiction over a corporate officer cannot be predicated merely upon jurisdiction over the corporation."  *Balance Dynamics Corp.*, 204 F.3d at 698 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).  However, where an agent is "actively and personally involved in the conduct giving rise to the claim," the court must consider "traditional notions of fair play and substantial justice; i.e., whether [the agent] purposely availed herself of the forum and the reasonably foreseeable consequences of that availment."  *Id.* at 698 (citations omitted).

Defendants argue the fiduciary-shield doctrine cannot be overcome here because courts generally require the physical presence of the employee in the forum state.  (22-CV-558, ECF Doc. 8, p. 15 (citing *Walker v. Concoby*, 79 F. Supp. 2d 827, 832 (N.D. Ohio 1999) and *Diebold, Inc. v. Firstcard Fin. Servs., Inc.*, 104 F. Supp.2d 758, 761 (N.D. Ohio 2000)).)  But the Sixth Circuit standard in *Balance Dynamics Corp.*, decided after the cases cited by Defendants, does not contain such a requirement.  *See* 204 F.3d at 698.  Instead, the Sixth Circuit holds personal jurisdiction over individual defendants is proper if they were actively involved in the tortious conduct and "purposely availed [themselves] of the [Ohio] forum and the reasonably foreseeable consequences of that availment."  *Id.*  More recent cases also focus on whether the individual was personally involved in the alleged tort or engaged in "solicitation and negotiations that give rise to a 'continuing obligation'" in the state.  *See Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019) (citations omitted).  Thus, whether the individual defendants traveled to Ohio is not determinative of the fiduciary-shield doctrine.

As to the first part of the standard – whether the individual defendants were actively involved in the alleged tortious conduct – the Court finds Plaintiffs have adequately alleged facts to meet this standard.  Plaintiffs allege that Mr. Prost and Mr. Reed signed the subcontractor

agreements, engaged in email and telephone communications with Plaintiffs regarding Prep's performance under the agreements, participated in a conference call with Plaintiffs regarding Prep's alleged abuse of trade-secret information and breach of the agreements, used ASAV's confidential and proprietary trade-secret information to solicit ASAV's customers, including Bloom, and diverted that business away from ASAV.  (22-CV-558, ECF Doc. 1, ¶¶ 37-38, 49-53, 55-58, 67, 72-79, 90, 92-93.)  Plaintiffs have thus adequately alleged that the individual defendants were actively involved in the asserted tortious conduct.

The second part of the standard – purposeful availment – is discussed in Section II.A.3. below.  Because the Court finds Plaintiffs have adequately established purposeful availment by the individual defendants, the fiduciary-shield doctrine does not prevent the exercise of personal jurisdiction over the individual defendants.

### 3.    Due Process

The Due Process Clause of the Fourteenth Amendment limits a court's power to exercise jurisdiction over an out-of-state defendant.  *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021) (citing *Int'l Shoe*, 326 U.S. 310 (1945)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). The Supreme Court has recognized two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  *See Ford Motor Co.*, 141 S.Ct. at 1024.  The forum state court "may exercise general jurisdiction only when a defendant is 'essentially at home' in the State."  *Id.* (quoting *Goodyear*, 564 U.S. at 919).

Plaintiffs do not argue general jurisdiction as the basis for this Court's jurisdiction over Defendants.  (*See* 22-CV-558, ECF Doc. 14, pp. 5-9; 22-CV-1399, ECF Doc. 13, pp. 8-12.) Instead, they argue the Defendants are subject to specific jurisdiction because they purposefully

availed themselves of Ohio's laws by incurring ongoing contractual obligations here, exploiting access to trade secrets ASAV developed in Ohio, and through contracts with a substantial connection to Ohio.  (*See id.*)  Defendants argue that personal jurisdiction is lacking because an exercise of jurisdiction by this Court does not comport with "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945).

The Sixth Circuit has established a three-part test for determining whether specific jurisdiction may be exercised over out-of-state defendants:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).  The Court will address each step of the *Southern Machine* test in turn.

### i.    Purposeful Availment

For a court to exercise specific jurisdiction, an out-of-state defendant's contacts with the state must first show their "purposeful availment" of the forum.  *See Ford Motor Co.*, 141 S.Ct at 1024 (quoting *Burger King Corp.*, 471 U.S. at 475).  A defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'"  *Id.* at 1024-25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The purposeful availment prong "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'"  *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (quoting *Burger King Corp.*, 471 U.S. at 475). "The contacts must be the defendant's own choice" and not based on isolated contact with the forum state.  *Ford Motor Co.* 141 S.Ct. at

14

1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  However, the defendant's "physical presence in the forum state is not required." *Id.*

The Supreme Court articulated an "effects test" in *Calder v. Jones*, establishing that personal jurisdiction exists where a defendant purposefully directs activities to the forum state with the intent to cause harm there.  465 U.S. 783, 789 (1984).  The *Calder*-effects test is applied narrowly.  *See Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also LeafFilter N., LLC v. Home Craft Builders, Inc.,* 487 F. Supp. 3d 643, 648 (N.D. Ohio 2020) ("The Supreme Court and Sixth Circuit have applied the *Calder*-effects test narrowly.").  Injury to a forum resident, without more, does not establish sufficient connection to the forum.  *Walden*, 571 U.S. at 290.  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Where an out-of-state defendant "has created 'continuing obligations' between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Air Prod. & Controls, Inc.*, 503 F.3d. at 551 (quoting *Burger King Corp.*, 471 U.S. at 476).  When considering agreements between an out-of-state defendant and a forum resident plaintiff, a choice of law provision alone is insufficient to establish jurisdiction.  *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000).  Nevertheless, a choice of law provision "can 'reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 482).

Plaintiffs argue the following facts show Defendants purposefully availed themselves of the Ohio forum: (1) the individual defendants executed subcontractor agreements on behalf of Prep that included continuing non-competition, non-solicitation, and confidentiality obligations (22-CV-558, ECF Doc. 1, ¶¶ 32, 36-43, 91); (2) Defendants agreed their ongoing contractual

15

obligations would be governed by Ohio law (*id.*, ¶¶ 39-43); (3) the individual defendants communicated with ASAV representatives in Ohio to gain access to trade secrets from ASAV's operations in Ohio (*id.*, ¶¶ 50-53, 91-93); (4) through those communications, the individual defendants obtained trade secrets that allowed them to sabotage ASAV's relationship with Bloom, a long-time customer who had provided ASAV with work in Ohio (*id.*, ¶¶ 26, 29-30); and (5) defendants exploited access to information from ASAV's Ohio operations to steal trade secrets and divert customers, injuring ASAV's economic and business interests in Ohio (*id.*, ¶¶ 6, 72-78, 87-93).  (22-CV-558, ECF Doc. 14, pp. 14-15.)

Defendants argue that neither the agreements, the choice of law provisions, nor the email and telephone communications are sufficient to demonstrate purposeful availment in this case. (22-CV-558, Doc. 15, pp. 15-19.)  They argue under *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), that a contract is "insufficient to confer personal jurisdiction" in Ohio where it is "not focused on exploiting the market in Ohio and d[oes] not create 'continuous and substantial consequences' in Ohio."  (22-CV-558, Doc. 15, p. 15 (citing *Cephalon*, 228 F.3d 718).)

In *Cole v. Mileti*, the Sixth Circuit found a defendant "purposefully availed himself of [a] forum by creating a continuing obligation in Ohio" when he "transact[ed] business by negotiating and executing a contract via telephone calls and letters to an Ohio resident."  133 F.3d 433, 436 (6th Cir. 1998).  But the court later found in *Calphalon* that a defendant did not purposefully avail himself of a forum upon entering a contract and communicating with an Ohio company when the "performance of the agreement was not focused on exploiting any market . . . in the state of Ohio" and the phone, mail, and fax contacts "occurred solely because [the plaintiff] chose to be headquartered in Ohio, not because [the defendant] sought to further its business and create 'continuous and substantial consequences there.'"  228 F.3d at 723.

16

Defendants argue the *Calphalon* analysis applies in this case because the subcontractor agreements governed work to be performed solely in Missouri, and because there are no allegations that Defendants performed work in Ohio, damaged business interests in Ohio, or caused the loss of future jobs to be performed in Ohio.  (ECF Doc. 15, pp. 15-19.)  This argument ignores important distinctions between *Calphalon* and this case.  In *Calphalon*, the claims related to an alleged breach of contract for non-renewal of an agreement and non-payment of commissions, all pertaining to work performed in other states.  *See* 228 F.3d at 720-21.  The court relied in part on its own prior findings that there was no purposeful availment where "no facts connected the subject matter or performance of the contract at issue to the forum state."  *Id.* at 722 (citing *Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997).)

Here, in contrast, the subcontractor agreements enabled Defendants to access proprietary and customer information from an Ohio company pursuant to their contractual commitment to protect that same information and not solicit those customers.  Despite this agreement, Defendants allegedly misused the protected information for the purpose of soliciting and stealing an existing customer.  ASAV had previously performed work for that customer in Ohio and other states, and the customer relationship was irreparably damaged.  Defendants also allegedly refused to return the confidential materials provided by the Ohio company under the agreements.

Ohio federal courts have held that "'[t]he misappropriation of trade secrets belonging to an Ohio company causes consequences in Ohio[,]' and satisfies the purposeful availment prong of *Southern Machine*."  *Just Funky, LLC*, 2021 WL 5494814, at *6 (quoting *Dayton Superior*, 288 F.R.D. at 168).  Here, Defendants are alleged to have purposefully entered agreements to protect proprietary information and not solicit customers, then misused the same information to solicit the same customers, irreparably damaging a customer relationship.  Construing the facts

17

in the light most favorable to Plaintiffs, the Court finds the "purposeful availment" prong is met in this case. Plaintiffs have adequately alleged facts suggesting that Defendants purposefully directed activities toward Ohio with an intent to cause harm in Ohio.

   **ii.**  **Arising From**

  The second prong of the *Southern Machine* test requires that the cause of action arise from a defendant's activities in the forum state. *See S. Mach.*, 401 F.2d at 381. This standard is met by a showing that a cause of action was "made possible by," "related to," or "connected with" a defendant's contacts with a forum state. *See Air Prod. & Controls, Inc.* 503 F.3d at 553 (quoting *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 909 (6th Cir.1988); *Youn v. Track, Inc.,* 324 F.3d 409, 419 (6th Cir.2003)); *see also Ford Motor Co.*, 141 S.Ct. at 1025 ("[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum.") (citations omitted). The standard is lenient and the legal claim need not "formally" arise from contacts with the forum state. *See Air Prod. & Controls, Inc.* 503 F.3d at 553 (citation omitted). Neither does it require "a strict causal relationship between the defendant's in-state activity and the litigation." *Ford Motor Co.*, 141 S. Ct. at 1026. The standard is met where "the operative facts are at least marginally related to the alleged contacts between … defendants and Ohio." *Int'l Paper Co. v. Goldschmidt*, 872 F.Supp.2d 624, 632 (S.D. Ohio 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

  Defendants argue Plaintiffs have failed to "assert that any of the alleged acts of the Defendants that are the subject of [their] claim[s] occurred in Ohio." (22-CV-558, ECF Doc. 8, p. 13.) They point out that Defendants are located in Missouri, and that the subcontractor agreements pertain to services performed in Missouri. (22-CV-1399, ECF Doc. 4, p. 20.) Plaintiffs respond that this prong is met in light of: Prep's continuing contractual obligations to

ASAV, an Ohio company, with respect to its proprietary information; Defendants' telephone and email communications with Plaintiff's representatives in Ohio regarding that proprietary information; Prep's breach of contractual obligations in order to misappropriate the proprietary information; and the resulting loss of ASAV's customer relationship with Bloom, a company for which ASAV had performed work in Ohio. (22-CV-558, ECF Doc. 14, p. 16; 22-CV-1399, ECF Doc. 13, p. 11.)

These factual allegations are sufficient to establish that Plaintiffs' claims "arise from" Defendants' alleged contacts with Ohio. Defendants undertook continuing contractual obligations to protect and not misuse the proprietary and customer information of an Ohio company, sent communications into Ohio for that purpose, and then breached the obligations to the detriment of the Ohio company's relationship with a customer operating in Ohio and other states. These alleged facts are sufficient to meet the "arising from" prong's lenient standard. *See Int'l Paper Co.*, 872 F.Supp.2d at 632-33 (finding disclosure of confidential and trade secret information obtained through contacts with Ohio satisfied second prong).

### iii. Reasonableness

Under the third prong of the *Southern Machine* test, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach.,* 401 F.2d at 381. Where the first two prongs were satisfied, "[a]n inference arises that the third factor is satisfied" as well. *Bird*, 289 F.3d at 875. Courts consider the following factors in determining whether the exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states'

interest in securing the most efficient resolution of the controversy.  *See Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

There is no question that it would impose a burden on Defendants to defend the present actions in Ohio, but the state of Ohio also has a strong interest in ensuring the enforcement of its laws and contracts that were entered to protect Ohio-based businesses.  Plaintiffs also have an interest in protecting their proprietary information and customer relationships.  This case is not one of the unusual cases where an exercise of personal jurisdiction is unreasonable. *See OnX USA LLC v. Sciacchetano*, 913 F. Supp. 2d 473, 480 (N.D. Ohio 2012); *CrossCountry Mortg., Inc. v. Messina*, No. 1:19CV1021, 2019 WL 5653288, at *14 (N.D. Ohio Oct. 31, 2019).

For all of the reasons set forth above, the Court finds Plaintiffs have satisfied their burden to demonstrate that personal jurisdiction comports with due process and is appropriate under Ohio's long arm statute.  The motions to dismiss for lack of personal jurisdiction are DENIED.

**B.**     ***Colorado River* Abstention**

The Court must next consider whether abstention is required under the *Colorado River* abstention doctrine.  Under this doctrine, a federal court may "abstain from deciding a federal court action in deference to a pending state court action."  *Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994) (citing *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976)).  "*Colorado River* abstention rests on considerations of 'wise judicial administration' and the general principle against duplicative litigation," and creates "a 'narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'"  *Bates v. Van Buren Tp.*, 122 Fed.Appx. 803, *3 (6th Cir. 2004) (quoting *Colo. River Water Cons. Dist.*, 424 U.S. at 817).  Abstention is thus only appropriate in extraordinary

circumstances. *See Baskin*, 15 F.3d at 571 (citing *Colo. River Water Cons. Dist.*, 424 U.S. at 817); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The threshold question in *Colorado River* abstention is whether there are "parallel" proceedings in state and federal court. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998); *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). If the state and federal actions are parallel, the court must then apply the factors identified in *Colorado River* and *Moses H. Cone* to determine whether extraordinary circumstances warrant abstention.

### 1. Parallel Proceedings

In determining whether actions are parallel for purposes of *Colorado River* abstention, "exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340 (internal quotations and marks omitted). Actions may be parallel where the parties are "substantially similar" and the claims "are predicated on the same allegations as to the same material facts." *Id.* In deciding this issue, the Court "must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994).

Plaintiffs argue that the Ohio Actions are not parallel to the Missouri Action because "there is no possible way for the Missouri court … to 'dispose of all claims presented' in" the Ohio Actions. (22-CV-558, ECF Doc. 14, p. 22.) They note specifically that they did not assert counterclaims in the Missouri Action that would permit the Missouri court to consider their trade secret claim. (*Id.* at pp. 21-22.) Defendants respond that there is a common threshold issue before both the federal and state courts, since ASAV's answer in the Missouri Action "alleges eleven affirmative defenses supported by a seven page statement of facts that are virtually identical to those ASAV alleged" in the Ohio Actions. (22-CV-558, ECF Doc. 15, p. 23.)

The Sixth Circuit addressed similar arguments in *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390 (6th Cir. 2019).  In that case, one party asserted contract and tort causes of action in state court, while the other party asserted breach of contract in federal court.  *See Healthcare Co. Ltd.*, 784 F. App'x at 392.  The federal plaintiff argued the actions were not parallel because the two complaints contested different aspects of the same disputed issue and sought different relief.  *See id.* at 393-94.  The plaintiff also noted it had not brought a counterclaim asserting its federal contract claim in the state court action.  *See id.* at 395.

The Sixth Circuit found the cases to be parallel because adjudication of the state court claims would "require determination of issues dispositive of" the federal court claim.  *Id.* at 394.  The court explained: "The proceedings in both courts are therefore 'predicated on the same allegations as to the same material facts;' that the two parties pursue separate legal theories is of no consequence."  *Id.* (quoting *Romine*, 160 F.3d at 340).  The court further held that it made no difference that the federal plaintiff had not asserted its federal claim as a counterclaim in the state action, since the court's examination of the existing claims already demonstrated "that the two proceedings are substantially similar."  *Id.* at 395 (citing *Baskin*, 15 F.3d at 572).

The same analysis is appropriate in this case.  The relevant actions include: (1) the Missouri Action, where Defendants claim breach of contract, quantum meruit, and unjust enrichment in connection with the subcontractor agreements; (2) the Federal Question Action, where ASAV claims misappropriation of trade secrets, in contravention of the subcontractor agreements; and (3) the Removal Action, where Plaintiffs claim breach of contract, tortious interference with contract and business relationships, and civil conspiracy to commit tortious interference in connection with the subcontractor agreements.

All three actions revolve around the parties' performance under the subcontractor agreements, and Plaintiffs premise their claims in the Ohio Actions and their affirmative defenses to the Missouri Action on "the same allegations as to the same material facts."  *See Healthcare Co. Ltd.*, 784 F. App'x at 394 (quoting *Romaine*).  To decide Prep's claims in the Missouri Action, the Missouri court must first consider ASAV's affirmative defenses that the claims are barred by "Prep's duty to preserve trade secrets and confidential information" and "breach of contract," based on the same set of material facts alleged in support of the claims asserted in the Ohio Actions.  (22-CV-558, ECF Doc. 8-3, pp. 42-54.)  Thus, as in *Healthcare Co. Ltd.*, the adjudication of Prep's state law claims in the Missouri Action "will require determination of issues dispositive of" Plaintiffs' claims in the Ohio Actions.  784 F. App'x at 394.  Plaintiffs' decision not to assert counterclaims in the Missouri action does not affect this analysis, since the proceedings are substantially similar even without the counterclaims.  *See id.* at 394-95. The Court finds the cases are parallel for purposes of *Colorado River* abstention.

### 2. *Colorado River* Factors

Having found the actions to be parallel, the Court must next determine whether judicial economy warrants abstention.  In *Colorado River*, the Supreme Court indicated the following factors should be balanced in determining whether abstention applies:

(1)     Whether the state court has assumed jurisdiction over any res or property;

(2)     Whether the federal forum is less convenient to the parties;

(3)     Avoidance of piecemeal litigation; and

(4)     The order in which jurisdiction was obtained.

*Colo. River*, 424 U.S. at 818-19. Courts have since identified the following additional factors for consideration in a *Colorado River* abstention analysis:

(5)     Whether the source of law is state or federal;

(6)     The adequacy of the state court action to protect the federal plaintiff's rights;

(7)     The relative progress of the state and federal proceedings; and

(8)     The presence or absence of concurrent jurisdiction.

*Romine*, 160 F.3d at 341 (citing *Moses H. Cone*, 460 U.S. at 21-28; *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978)).  These factors are not a "mechanical checklist," but instead require "a careful balancing of the important factors as they apply in a given case."  *Moses H. Cone*, 460 U.S. at 16.  "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."  *Id.* When balancing these factors, however, the district court must start with the scale heavily weighted in favor of exercising jurisdiction.  *Id.*

Even with the scale initially weighing in favor of jurisdiction, the Court finds the balance of factors in this case ultimately weighs in favor of abstention.  Pivotal to this analysis is the most important consideration in a *Colorado River* abstention determination, noted in *Moses H. Cone* to be "'paramount in *Colorado River* itself – the danger of piecemeal litigation.'"  *Romine*, 160 F.3d 337, 341 (6th Cir. 1998) (quoting *Moses H. Cone*, 460 U.S. at 16).  "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results."  *Id.*

Here, ASAV's affirmative defenses to the Missouri Action are premised on the same detailed factual allegations that form the bases for Plaintiffs' claims in both Ohio Actions.  (22-CV-558, ECF Doc. 1, pp. 4-15; ECF Doc. 8-3, pp. 45-52; 22-CV-1399, ECF Doc. 1-2, pp. 6-16.)  The affirmative defenses also parallel specific claims for relief asserted in the Ohio Actions.  For example, ASAV's defense that Prep's contract claims are barred "by Prep's duty to preserve trade secrets and confidential information" (22-CV-558, ECF Doc. 8-3, p. 52) is parallel to both

ASAV's claim for misappropriation of trade secrets in the Federal Question Action (22-CV-558, ECF Doc. 1, ¶¶ 97-107) and Plaintiffs' claim in the Removal Action that Prep breached the subcontractor agreements "by, among other things, misusing ASAV's confidential, trade-secret information" (22-CV-1399, ECF Doc. 1-2, p. 17, ¶¶ 95-99).  ASAV's defense that Prep's claims are also barred "by breach of contract" is likewise parallel to Plaintiffs' claim in the Removal Action that Prep breached the subcontractor agreements.  (*Id.*)

All three actions thus revolve around the same agreements and factual allegations.  The Missouri court cannot determine Prep's right to relief in the Missouri Action without first making determinations regarding the legal claims before this Court, including whether Prep breached the subcontractor agreements and whether Defendants failed to preserve trade secrets and confidential information as provided in those agreements.  If both the Missouri and the Ohio Actions are permitted to proceed, therefore, "two courts would be adjudicating the same legal issue – the classic piecemeal litigation situation." *Healthcare Co. Ltd.*, 784 F. App'x at 396.

The Sixth Circuit has emphasized the importance of the piecemeal litigation factor, stating duplicative litigation threatens piecemeal results and judicial inefficiency, and that:

> [t]he legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Romine*, 160 F.3d at 341 (quoting *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 694 (7th Cir. 1985).  Given the risk of conflicting findings, inefficiency, and fairness concerns, the Court finds that the third factor – avoidance of piecemeal litigation – strongly favors abstention. *See also Intelligrated Sys., LLC v. Hy-Tek Material Handling Installation Servs.,* No. 1:21-CV-807, 2022 WL 1423169, at *4 (S.D. Ohio May 5, 2022); *RGIS, LLC v. Gerdes*, No. 19-11866, 2020 WL 2043484, at *7 (E.D. Mich. Apr. 28, 2020).

Factors four and seven also favor abstention.  As to factor four – the order of jurisdiction – the Missouri Action was filed first, the Federal Question Action three weeks later, and the Removal Action three months after that.  This factor therefore slightly favors abstention in the Federal Question Action and generally favors abstention in the Removal Action.  As to factor seven – the relative progress of proceedings – all of the cases remain in the early stages of litigation, but the Missouri Action has made more substantive progress.  While all activity in the Ohio Actions has been postponed pending the Court's ruling on the present Motions, the Missouri state court ruled on ASAV's motion to dismiss and permitted the filing of an Amended Petition, ASAV filed its responsive pleading, a stipulated protective order was entered, and the discovery process commenced.  The Supreme Court observed that the order of jurisdiction "should not be measured exclusively by which complaint was filed first," but should be considered "in terms of how much progress has been made" in each action.  *Moses H. Cone*, 460 U.S. at 21.  Here, the Missouri Action was filed first and has made more substantive progress.  These two factors favor abstention.

In contrast, the first two factors – the court's jurisdiction over property in the state action and convenience of the federal forum – favor jurisdiction.  Both parties agree there is no physical property at issue and the convenience of the federal forum in Ohio is equivocal, since Defendants reside in Missouri, Plaintiffs in Ohio, and potential witnesses may be in either state.  Because the scale is weighted in favor of jurisdiction, these two factors tilt in favor of retaining jurisdiction.

Factors five and eight – the source of law and presence of concurrent jurisdiction – weigh for and against jurisdiction respectively. The Federal Question Action states a federal claim and the Removal Action states claims under Ohio law.  Under factor five, this weighs against the Ohio Actions being decided by a Missouri state court.  However, "'the source-of-law factor has

26

less significance . . . [where] the federal courts' jurisdiction to enforce [the statutory rights in question] is concurrent with that of the state courts.'" *Romine*, 160 F.3d at 342 (quoting *Moses H. Cone*, 460 U.S. at 26) (bracketed language in original)).  Here, the Missouri state court has concurrent jurisdiction to decide the federal and Ohio state law claims.  Indeed, Defendants report the Missouri state court has already ruled in response to ASAV's motion to dismiss that dismissal is not warranted based on the Ohio choice-of-law provision in the subcontractor agreements, but that Ohio law will be applied in deciding the case.  (22-CV-558, ECF Doc. 8, pp. 21-22.)  Thus, factor five favors jurisdiction and factor eight weighs in favor of abstention.

These factors also inform the sixth and final factor – the adequacy of the state court to decide the claims in the Ohio Actions.  This factor favors abstention, as there is no indication that the Missouri court is inadequate to decide the federal or Ohio state law claims.  Its concurrent jurisdiction with this Court permits its adjudication of the federal claims, and its application of Ohio law to the contract dispute permits its adjudication of the state law claims.

Ultimately three factors favor an exercise of jurisdiction, and five factors favor abstention.  Importantly, the need to avoid piecemeal litigation weighs strongly in favor of abstention.  The driving principal of abstention is the need for "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (citation omitted).  Here, the Missouri Action was filed first, has progressed further, and will require the state court to make legal and factual determinations that are at the heart of the two actions currently pending before this Court.  Balancing all of the *Colorado River* factors, the undersigned finds abstention is warranted in this case.

Prep requests that this matter be stayed or dismissed if abstention is warranted.  The prevailing view in the Sixth Circuit is that cases finding *Colorado River* abstention warranted

27

should be stayed.  *See Bates v. Van Buren Twp.*, 122 F.App'x 803 (6th Cir. 2004); *see also Blake v. Wells Fargo Bank, NA*, 917 F.Supp.2d 732 (S.D. Ohio 2013); *Multi Holsters, LLC. V. Tac Pro Inc.*, 2017 WL 4098857 (E.D. Mich. 2017).  Accordingly, the Court orders that the consolidated Ohio Actions be STAYED pending final determination of the Missouri Action.

**C.      Motion to Transfer Venue**

Defendants have requested that this Court transfer venue of the Ohio Actions to the Eastern District of Missouri for convenience "if there is personal jurisdiction and the *Colorado River* abstention doctrine is not applied."  (22-CV-558, ECF Doc. 8, p. 24.)  Because the Court has found abstention to be warranted, it need not address Defendants venue arguments.

**III.      Conclusion**

For reasons outlined above, the undersigned finds the exercise of personal jurisdiction over Defendants is proper but abstention is warranted under the *Colorado River* doctrine. Defendants' Motions to Dismiss and Transfer Venue are DENIED, Defendants' Motions for Abstention are GRANTED, and these proceedings are STAYED pending disposition of the Missouri Action.  Every ninety days following the entry of this order, the parties shall file a Joint Status Report updating the Court on the status of the Missouri Action in the lead case (22-CV-558).  Further, within thirty days of the conclusion of the Missouri Action, the parties shall file a Joint Status Report describing the final disposition of that case.

April 14, 2023

> */s/Amanda M. Knapp*
> AMANDA M. KNAPP
> United States Magistrate Judge